VICTOR M. SHER (SBN 96197)
vic@sheredling.com
MATTHEW K. EDLING (SBN 250940)
matt@sheredling.com
TIMOTHY R. SLOANE (SBN 292864)
tim@sheredling.com
**SHER EDLING LLP**
425 California Street, Ste. 810
San Francisco, CA 94104
Tel:     (628) 231-2500
Fax:     (628) 231-2929

*Attorneys for Plaintiff*
*Rio Linda Elverta Community Water Distric*t

## UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIO LINDA ELVERTA COMMUNITY WATER DISTRICT,<br><br>            Plaintiff,<br><br>        vs.<br><br>THE UNITED STATES OF AMERICA, ELEMENTIS CHROMIUM INCORPORATED, OCCIDENTAL CHEMICAL CORPORATION, HONEYWELL INCORPORATED, BASF CORPORATION, PPG INCORPORATED, E.I DU PONT DE NEMOURS AND COMPANY, UNIVAR INCORPORATED, LUXFER HOLDINGS PLC, SIGMA-ALDRICH CORPORATION, and DOW CHEMICAL COMPANY,<br><br>            Defendants. | Case No. _____<br><br>**COMPLAINT FOR**:<br><br>1. SUBSTANTIAL AND IMMINENT ENDANGERMENT UNDER RCRA, 42 U.S.C. § 6972(a)(1)(B);<br>2. NUISANCE;<br>3. NEGLIGENCE;<br>4. TRESPASS;<br>5. STRICT LIABILITY – DESIGN DEFECT;<br>6. STRICT LIABILITY – FAILURE TO WARN;<br>7. CAL. CIVIL CODE § 1882.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**                                                                  1

## <u>TABLE OF CONTENTS</u>

**I.    INTRODUCTION**......................................................................................... 1

**II.   PARTIES** ................................................................................................ 2

    A.    Plaintiff ...................................................................................... 2

    B.    Defendants .................................................................................. 2

**III.  JURISDICTION AND VENUE** ................................................................ 5

**IV.   FACTUAL ALLEGATIONS** ..................................................................... 6

    A.    Rio Linda Elverta Community Water District ............................. 6

    B.    The Contaminant: Hexavalent Chromium ................................... 7

    C.    Relevant Hydrogeology ............................................................... 9

    D.    Defendant United States' Contribution to the Handling, Storage, Treatment, Transport, Disposal, and Environmental Release of Hexavalent Chromium at McClellan................................................................................... 10

    E.    Air Force Released Hexavalent Chromium into the Environment at McClellan, Which Caused the Contamination of Rio Linda's Wells............................................. 13

    F.    Supplier Defendants Introduced Products Containing Cr(VI) into the Market Despite Knowing of Their Defects and Failed to Warn Consumers of Those Defects ........... 14

    G.    Rio Linda's Injuries and Damages Arising Out of Cr(VI) Contamination................. 16

**V.    CAUSES OF ACTION** ........................................................................ 17

    FIRST CAUSE OF ACTION
    42 U.S.C. § 6972(a)(1)(B)
    Substantial and Imminent Endangerment as Against U.S. Air Force................................... 17

    SECOND CAUSE OF ACTION
    Contribution to the Creation of a Nuisance as Against All Defendants ............................. 18

    THIRD CAUSE OF ACTION
    Negligence as Against All Defendants ........................................................................ 21

    FOURTH CAUSE OF ACTION
    Trespass as Against All Defendants .................................................................................. 24

**COMPLAINT**                            i

FIFTH CAUSE OF ACTION
Strict Liability – Design Defect as Against Supplier Defendants.........................................26

SIXTH CAUSE OF ACTION
Strict Liability – Failure to Warn as Against Supplier Defendants ....................................28

SEVENTH CAUSE OF ACTION
Liability under California Civil Code Section 1882 as Against All Defendants.................31

**VI.  PRAYER FOR RELIEF**...........................................................................................**32**

**VII. JURY DEMAND** ....................................................................................................**33**

**COMPLAINT**                                                                              ii

## I.    INTRODUCTION

1.    Plaintiff Rio Linda Elverta Community Water District ("Rio Linda," "the District," or "Plaintiff") is a public drinking water purveyor to businesses and residents in the communities of Rio Linda and Elverta, in northwestern Sacramento County, California. Rio Linda seeks to recover the substantial costs necessary to protect the public and restore its damaged drinking water supply, which is contaminated with the toxic chemical, hexavalent chromium ("Cr(VI)").

2.    Cr(VI) is a highly toxic substance linked with numerous health risks, including skin irritation; ulcers in the stomach and intestines; anemia, mouth, tongue, stomach and intestinal cancers and tumors; DNA damage, and other maladies.

3.    The Defendants in this action are (1) the United States of America ("United States"), who, by and through the United States Department of the Air Force ("Air Force"), handled, stored, treated, transported, and/or disposed of industrial products that contained Cr(VI), and in so doing, released Cr(VI) into the environment; and (2) the manufacturers and distributors of industrial products that contain Cr(VI) that caused the contamination of Plaintiff's drinking water supply. The manufacturer and/or distributor Defendants ("Supplier Defendants") knowingly and willfully manufactured, promoted and sold products containing Cr(VI) to the Defendant United States, when they knew or reasonably should have known that this harmful compound would reach groundwater, pollute drinking water supplies, render drinking water unusable and unsafe, and threaten the public health and welfare, as it has done with respect to Plaintiff's drinking water supply. Defendant United States and the Supplier Defendants are referred to collectively as "Defendants."

4.    Products containing Cr(VI) were used at McClellan Air Force Base in the course of aircraft maintenance activities, as well as other regular activities. Defendants' defective Cr(VI)-containing products, coupled with their failure to warn of those defects, failure to control hexavalent chromium during its use and disposal, and failure to control known Cr(VI) releases into the local groundwater aquifer, have all resulted in the contamination of Plaintiff's drinking water supply, to its material and significant detriment.

**COMPLAINT**                                                                1

5.      Plaintiff brings this action to recover all necessary funds to design, construct, install, operate and maintain treatment facilities and equipment required to remove the Cr(VI) from Plaintiff's drinking water supplies and ensure that the parties responsible for the drinking water contamination bear this expense, rather than Plaintiff and its ratepayers.

II.    **PARTIES**

   A.    **Plaintiff**

6.      Plaintiff Rio Linda Elverta Community Water District is a public drinking water purveyor organized under California Water Code section 30000, et seq. Plaintiff owns and operates a water system consisting of drinking water wells and real estate on which its wells are located, among other facilities, in Sacramento County, California. Rio Linda's headquarters are located at 730 L Street, Rio Linda, California 95673.

   B.    **Defendants**

7.      **Defendant the United States of America** is a republic formed pursuant to the United States Constitution exercising the powers enumerated therein subject to certain limitations. The United States has liability in this action due to the acts and omissions of the Department of the Air Force, an agency and instrumentality of the United States of America, headquartered at 1690 Air Force Pentagon, Washington D.C. 20330. At all relevant times, Air Force was the owner/operator of former McClellan Air Force Base ("McClellan" or "the Base"), which has also been known as "Pacific Air Depot," "Sacramento Air Logistics Center," "Sacramento Air Depot," "SMAMA (Sacramento Air Materiel Area)," and/or "McClellan Air Field."

8.      The following Defendants, hereinafter referred to as "Supplier Defendants," are manufacturers, distributors and/or marketers of chromates and related products containing Cr(VI) (referred to collectively as "chromate products"). Such products are chemicals derived from the processing of chromite ore to produce products that contain both chromates and dichromates, and products derived therefrom, including, but not limited to, sodium dichromate (a/k/a sodium bichromate), chromic acid, and potassium dichromate (a/k/a sodium bichromate),

zinc chromate, and certain paints and primers. Chromate products were used extensively at McClellan Air Force Base during its operation as a military installation.

9.     Each and every Supplier Defendant provided, either directly, or through the stream of commerce, chromate products to Defendant United States, including for use at McClellan, or is responsible for doing so as a successor-in-interest to an entity that supplied chromate products to Air Force at McClellan.

10.     **Elementis Chromium Incorporated** ("Elementis") is a manufacturer, marketer, distributor and seller of chromate products. Elementis is incorporated in the State of Delaware with its principal office in East Windsor, New Jersey. It is the successor-in-interest to American Chrome and Chemical and Harcros Chemical (collectively "Elementis Predecessors"). The Elementis Predecessors, during the time relevant to this litigation, supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

11.     **Occidental Chemical Corporation** ("Occidental"), also known as "Oxychem," was at times relevant to this litigation a manufacturer, marketer, distributor and/or seller of chromate products. Occidental is incorporated in the State of New York with its principal place of business in Dallas, Texas. Occidental at times relevant to this litigation supplied chromate products to Air Force's operations at McClellan. Occidental is the successor corporation to Diamond Shamrock Company, Diamond Alkali Works, and the Martin Dennis Company (collectively, the "Occidental Predecessors"). Occidental acquired Diamond Shamrock's chromium operations in 1986. The Occidental Predecessors, during the time relevant to this litigation, supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

12.     **Honeywell Incorporated** ("Honeywell") is a multinational industrial products and technology company incorporated in the State of Delaware and with its principal place of business in Morris Plains, New Jersey. Honeywell is the successor corporation to Mutual Chemical Company of America. Mutual Chemical Company of America, during the time relevant to this litigation, supplied the military, including Air Force, either directly or indirectly,

with chromate products, including for use at McClellan. Honeywell is the successor corporation to Allied Chemical. During the time relevant to this litigation, Allied Chemical supplied the military, including Air Force, with chromate products, including for use at McClellan.

13.     **BASF Corporation** ("BASF") is the largest United States affiliate of the German multinational chemical company BASF SE. BASF is the successor in interest to BASF Performance Products LLC (f/k/a Ciba Corporation, f/k/a Ciba Specialty Chemicals Corporation) and is headquartered in Delaware, with a principal place of business located in Florham Park, New Jersey. BASF is the successor corporation to Imperial Paper and Color Corporation ("Imperial"). Imperial, during the time relevant to this litigation, supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan. Imperial was ultimately acquired by Ciba-Geigy Corporation, which in turn spun off its non-pharmaceutical business when it merged with Sandoz and created Novartis AG, creating Ciba Specialty Chemicals Corporation.

14.     **PPG Incorporated** ("PPG") is a global supplier of paints and coatings incorporated in the State of Pennsylvania and with its principal place of business in Pittsburgh, Pennsylvania. PPG is the successor corporation to Natural Products Refining Corporation. Natural Products Refining Corporation, during the time relevant to this litigation, supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

15.     **E.I Du Pont De Nemours and Company** ("DuPont") is an American conglomerated chemical company, incorporated in the State of Delaware and with its principal place of business in Wilmington, Delaware. At times relevant to this litigation, DuPont supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

16.     **Univar Incorporated** ("Univar") is a chemical distribution company incorporated in the State of Delaware with its principal place of business in Downers Grove, Illinois. Univar is the successor corporation to Van Rogers and Waters, Incorporated. During the

time relevant to this litigation, Van Rogers and Water, Inc., supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

17.     **Luxfer Holdings PLC** ("Luxfer") is a global materials technology company incorporated in the United Kingdom with its principal place of business in Salford, England. Its wholly owned subsidiary Luxfer Magtech Inc. is the successor corporation to Truetech, Incorporated, which in turn is the successor corporation to Chemical Compounding Corporation ("CCC"). During the time relevant to this litigation, CCC supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

18.     **Sigma-Aldrich Corporation** ("Sigma-Aldrich") is a multinational chemical company incorporated in Delaware with its principal place of business in St. Louis, Missouri. Sigma-Aldrich is the corporate successor to Aldrich Chemical. During the time relevant to this litigation, Aldrich Chemical supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

19.     **Dow Chemical Company** ("Dow") is a multinational chemical corporation incorporated in Delaware and with its principal place of business in Midland, Michigan. Dow is the corporate successor to Essex Chemical Corporation. During the time relevant to this litigation, Essex Chemical Corporation supplied the military, including Air Force, either directly or indirectly, with chromate products, including for use at McClellan.

III.     **JURISDICTION AND VENUE**

20.     This action involves injuries and damages arising out of non-discretionary duties by defendant United States actionable under the Federal Tort Claims Act ("FTCA") as well as federal questions arising under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq. Accordingly, this court has jurisdiction over the subject matter of this action as against the United States pursuant to 28 U.S.C. §§ 1331, 1346(b); and 42 U.S.C. §§ 6972(a).

21.     Rio Linda's state tort causes of action as against Supplier Defendants arise out of the same set of operative facts as its federal statutory cause of action. Accordingly, this Court has

1  subject matter jurisdiction over the subject matter of this action as against Supplier Defendants

2  pursuant to 28 U.S.C. section 1367(a).

3  22.    Rio Linda provided Defendant United States, by and through delivery to Air

4  Force, of notice of the imminent and substantial endangerment that is the subject of this claim,

5  and of its intent to sue, on March 2, 2017. At least ninety days have passed since Air Force

6  received the Notice Letter. No regulatory agency has commenced and is diligently prosecuting

7  any action to address the contamination that is the subject of this action.

8  23.    Rio Linda brings its common law claims arising out of non-discretionary duties of

9  Defendant United States pursuant to the procedures set forth in the Federal Tort Claims Act, 28

10  U.S.C. sections 1346(b), 2671 - 2680, under which Defendant United States has waived its

11  sovereign immunity. Rio Linda presented a claim to Air Force on November 11, 2016. Air Force

12  denied the claim on May 9, 2017.

13  24.    Each and every Supplier Defendant and/or their predecessors-in-interest

14  purposefully availed themselves of the privilege of conducting activities within the Eastern

15  District California, namely through supplying Cr(VI)-containing products to McClellan.

16  25.    Venue is proper in the Eastern District of California pursuant to 28 U.S.C.

17  sections 1391(b) and 1402 because the acts and omissions giving rise to this claim occurred in

18  the Eastern District of California, and because Plaintiff is domiciled in the Eastern District of

19  California.

20  **IV.    FACTUAL ALLEGATIONS**

21      **A.    Rio Linda Elverta Community Water District**

22  26.    The District meets its customers' demand for water from municipal supply wells,

23  which draw from the local groundwater aquifer. The District gets all its drinking water supply

24  from its wells. The District's wells currently deliver approximately 3,000 acre feet per year to the

25  District's customers.

26  27.    The District holds a property interest in its non-overlying groundwater right that is

27  recognized under the law of the State of California. The District's water right is usufructuary,

28

1   entitling the District to appropriate and use groundwater from the aquifer underlying its service

2   area to supply its customers with drinking water.

3       28.     The District owns its drinking water wells and pumping and transmission

4   infrastructure.

5       29.     The District pumps its groundwater out of the North American Sub-basin

6   ("NAS"), a 548-square mile groundwater basin located in California's Sutter, Placer, and

7   Sacramento Counties. The NAS is bounded by the American River to the South, the Bear River

8   to the North, the crystalline basement rock of the Sierra Nevada to the East, and the Feather and

9   Sacramento Rivers to the West. Rio Linda's service area is located within the surface boundaries

10  of the NAS; all of Rio Linda's wells are located within Rio Linda's service area.

11      30.     Former McClellan Air Force Base is also located within the boundaries of the

12  NAS. McClellan is adjacent to Rio Linda's service area, immediately to the Southwest.

13      31.     McClellan overlies the same groundwater aquifer from which Rio Linda obtains

14  drinking water. The aquifer is coextensive within the entire NAS, including the area demarcated

15  by the combined surface footprint of Rio Linda's service area and McClellan, and including the

16  locations where Rio Linda's drinking water production wells are located.

17      32.     The NAS groundwater aquifer in the area encompassing Rio Linda's service area

18  and McClellan, and including Rio Linda's wells from which it produces drinking water, is

19  contaminated with Cr(VI).

20      33.     Rio Linda's wells have produced, produce, and will continue to produce drinking

21  water that is contaminated with Cr(VI).

22      **B.      The Contaminant: Hexavalent Chromium**

23      34.     Cr(VI) is a toxic form of the element chromium (Cr) in the +6 oxidation state.

24  Chromium typically occurs in nature in the trivalent state ("Cr(III)") as the mineral chromite.

25  Chromium in the hexavalent state is far less common in nature and is generally anthropogenic.

26      35.     Industrial compounds and materials containing Cr(VI) are derived from

27  chromium ore, which contains insoluble trivalent chromium most commonly in the mineral

28  chromite. To produce chromate products, chromium ore is processed to convert the trivalent

chromium to soluble Cr(VI), resulting in sodium chromate. Sodium chromate is then converted by acidification and crystallization to sodium dichromate, from which chromate products, including those used at McClellan, are derived.

36.     Chromate products are commonly used in pigments, metal finishing processes, including electroplating, wood preservative and fungicides, and in chemical synthesis as an ingredient and catalyst. Examples of chromate products used at McClellan include, but are not limited to, sodium dichromate; chromic acid; zinc chromate; and certain paints and primers.

37.     Cr(VI) is a dangerous contaminant and is linked with numerous health risks, including skin irritation; ulcers in the stomach and intestines; anemia, mouth, tongue, stomach and intestinal cancers and tumors; DNA damage, and other maladies.

38.     A 2007 National Toxicology Program (NTP) study found significant numbers of gastrointestinal tumors in male and female rats and mice that consumed drinking water with Cr(VI). In addition, studies have found increased rates of stomach cancer in people exposed to high levels of Cr(VI) from drinking water. Scientific studies have found a higher than average rate of lung and gastrointestinal cancers in workers who inhaled Cr(VI) on the job. There is substantial evidence that Cr(VI) damages DNA.

39.     Information and studies on the toxicity of chromium, as well as its fate, persistence and movement in the environment, have been available since before Air Force began using chromate products at McClellan, and before Supplier Defendants provided chromate products to Air Force.

40.     Supplier Defendants were, at all times relevant to this action aware or reasonably should have been aware, of the human health and environmental hazards associated with the use and handling of chromate products, and Cr(VI) specifically.

41.     Defendant United States was, during a substantial portion of the time relevant to this litigation, aware or reasonably should have been aware of the human health and environmental hazards associated with the use and handling of chromate products, and Cr(VI) specifically.

42.     Total chromium (including Cr(III), Cr(VI) and all other oxidation states) concentrations in solid waste greater than 5 parts per million (ppm), is defined as a hazardous waste pursuant to 40 C.F.R. section 261.24.

43.     Because of Cr(VI)'s grave health implications, California defined a public health goal to limit Cr(VI) concentrations in drinking water to no more than 0.02 parts per billion (ppb). California is in the process of promulgating a MCL specifically for Cr(VI) in light of the public health goal.

44.     Concentrations of Cr(VI) in the District's wells exceed California's public health goal by several orders of magnitude.

45.     District customers – including children, women of childbearing age, those with impaired immune systems, and others – depend on the NAS aquifer and the District's production wells for their domestic water supply. Use of water produced from the District's contaminated wells threatens those customers with exposure to and injury from Cr(VI). That exposure is imminent – the District must continue to provide a domestic water supply, and District customers will continue to consume it. Even if District customers avoid drinking water from the NAS aquifer, use for washing, bathing and other domestic activities is a pathway to exposure to Cr(VI).

46.     Cr(VI) is a mobile and persistent compound in groundwater.

**C.     <u>Relevant Hydrogeology</u>**

47.     Groundwater, including groundwater containing contaminants, in the NAS aquifer, over which McClellan and the District's service area are located, has and continues to migrate through the aquifer, beyond the surface boundaries of the Base.

48.     Hydrogeologic records demonstrate that groundwater has flowed from the Base toward, through and past the District's service area, including the locations of its drinking water production wells, for decades.

49.     This groundwater flow and migration occurred while releases of Cr(VI) occurred at the Base and continued once Cr(VI) reached the subsurface and groundwater underlying

McClellan. Seasonal groundwater depressions facilitated movement of contaminants including Cr(VI) through the aquifer and toward the District's wells.

50.     The highest concentrations of Cr(VI) – both overall and in the District's wells – are generally nearest the Base and decrease with distance from the Base.

**D.     Defendant United States' Contribution to the Handling, Storage, Treatment, Transport, Disposal, and Environmental Release of Hexavalent Chromium at McClellan**

51.     Defendant United States, by and through the Department of the Air Force, is the current and/or past owner and operator of the Air Force installation and facilities at McClellan. Defendant operated McClellan as a military base from 1936 until 2001.

52.     During the period relevant to this litigation, Air Force was authorized to, and did, contribute to and actually handle, store, treat, transport and/or dispose of contaminants and hazardous substances at McClellan.

53.     Among the contaminants and hazardous substances Air Force handled, stored, treated, transported and/or disposed of at McClellan were contaminants and hazardous substances containing Cr(VI), including Supplier Defendants' chromate products.

54.     Air Force used materials containing Cr(VI), including Supplier Defendants' chromate products, at McClellan in routine and regular industrial activities. For instance, metal plating was a routine aspect of airplane maintenance activities carried out at the Base. Air Force engaged in metal plating as a means of protecting aircraft parts and other items from corrosion. Metal plating was a regular and frequent activity at McClellan, and necessitated the consumption of significant quantities of chromic acid over the lifespan of the Base.

55.     Materials containing Cr(VI) were also used in painting activities, and/or other routine activities undertaken at the Base.

56.     Air Force's handling, storage, treatment, transport and disposal of chromate products containing Cr(VI) were ongoing and continuous through McClellan's closure as an Air Force base in 2001.

57.     Air Force activities involving chromate products resulted in the release of Cr(VI) into the groundwater aquifer underlying the Base.

58.     Certain Air Force activities that contributed to the handling, storage, treatment, transport and disposal of materials containing Cr(VI) at McClellan which in turn caused the presence of Cr(VI) in the groundwater plume below the Base, and consequently Rio Linda's wells, are discussed below. This list is intended to illustrate the scope of Air Force activities at McClellan that contributed to the past or present handling, storage, treatment, transportation or disposal of Cr(VI); it is not a complete list:

a.     Historic Building 343 at Air Force Parcel A4d/Legal Lot 107A housed a plating shop where plating, battery storage and maintenance, sandblasting, buffing, and lacquer operations were conducted up until 1962, when it was converted to a warehouse for nonhazardous materials.  Building 343 was also identified as a pretreatment facility, which included chromium and cadmium recovery and residual chromium reduction.

b.     Air Force operated Industrial Wastewater Treatment Plant (IWTP) #1, located at Air Force parcel B2/Legal Lot 114B. IWTP #1 treated industrial wastewater containing chromic acid from base operations from 1954 to 1972. This facility was demolished in 1994. Public records prepared as recently as 2012 show chromium contamination at this site.

c.     Historic Building 431, located on Air Force parcel B2/Legal Lot 120 housed a jet engine testing facility from 1955 to 1992. Air Force handled and stored Cr(VI) and other hazardous substances during engine testing. An underground wastewater storage tank that likely held Cr(VI) was located under or near Building 431, and a specific Cr(VI) storage tank was located inside the building.

d.     Historic Building 666 at Air Force parcel A6d/Legal Lot 148A housed a Base plating shop from the late 1950s until 1980. From 1980 to 1982, Building 666 was used to store hazardous waste. From 1988 to 2008, the site was covered

by the concrete building foundation and several covered trenches and pits. These trenches and pits had concrete walls and floors. In 2008, the foundation, trenches and pits were removed, and the site is now unpaved soil. Cr(VI) was considered a contaminant of concern at this site as recently as July 2009.

e.      Parcel B2/Legal Lot 114A was used as eight evaporation beds to dewater sludge discharged from the Base's IWTP #1 from 1972 – 1992. The area around the drying beds was mostly unpaved. Sludge was held in the beds for 2-3 months and then transferred to a disposal site. Public records prepared as recently as 2012 show chromium contamination in this area that ostensibly came from the industrial wastewater treatment and evaporation. *Id.* at p. 200. IWTP #1 received wastewater containing chromic acid from base operations from 1954 to 1972.

f.      Air Force operated a metal plating shop, a hazardous material storage area, and IWTP #2 at Air Force Parcel B1b. Beginning in 1979, liquid waste from plating operations containing chromium and other hazardous materials was separated and piped to IWTP #2. IWTP #2 discharged the treated wastewater via an industrial waste line. A hazardous waste staging area that likely contained Cr(VI) was located on this parcel just east of historic Building 243 Bay G. Public records prepared as recently as 2012 show metal contamination at this site.

g.      In 1995, 4099 kg of chromium in compounds was stored at Building 667, the Radome repair shop and radar test facility. Although it was represented that "all" of the 4099 kg were removed, available records do not indicate when, how and where the material was disposed.

h.      Air Force disposed of industrial waste, including waste containing Cr(VI), in several ways, and at multiple locations at McClellan. Disposal sites identified at McClellan at least as far back as 1984 include burn and burial pits and trenches, landfills, and unlined ponds and ditches contaminated with plating wastes, solvents, acids, waste oils, paint thinners, strippers and sludges and other hazardous compounds.

**COMPLAINT**

### E.   Air Force Released Hexavalent Chromium into the Environment at McClellan, Which Caused the Contamination of Rio Linda's Wells

59.     Air Force's handling, storage, treatment, transport and/or disposal of materials containing Cr(VI) at McClellan contributed to environmental releases of Cr(VI) at multiple locations at McClellan.

60.     Air Force's conduct at McClellan caused the release of Cr(VI) via a number of pathways. These include, but are not limited to: leaks from storage containers, piping, floor drains and sumps; accidental spills; leaching from treated and/or untreated industrial waste; settling of airborne emissions; and others.

61.     Air Force knew at the time it was using Cr(VI)-bearing products at the Base that contaminants released at the Base, including Cr(VI), had infiltrated the underlying groundwater aquifer. Air Force has for decades monitored groundwater quality at the Base. Cr(VI) is well-documented to have contaminated underlying soil and groundwater, resulting in very high concentrations of Cr(VI) at the Base.

62.     Total chromium concentrations, of which Cr(VI) is a constituent, in the groundwater aquifer immediately underneath McClellan have been documented at least as high as 840 ppb.

63.     Air Force has characterized Cr(VI) as a contaminant of concern in the main base groundwater plume at McClellan.

64.     Air Force has engaged in mandatory cleanup of contaminants located underneath McClellan pursuant to the Comprehensive Environmental Response, Compensation and Lability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq. This cleanup effort addressed multiple contaminants, including Cr(VI), known to have infiltrated the subsurface and groundwater underlying the Base. Air Force, and its successors-in-interest, have not expanded CERCLA remediation beyond the surface boundaries of the Base.

65.     Air Force has identified 326 areas at McClellan of known and/or suspected hazardous waste contamination. Many of these waste areas contain or contained Cr(VI).

66.     Volatile organic compound contamination of private drinking water wells outside of the Base in the late 1970s and 1980s put Air Force and the United States on notice that contaminants from McClellan were migrating through the groundwater aquifer and contaminating wells located outside of the Base's surface boundaries.

67.     The groundwater pumped from the District's active wells meets all State of California primary and secondary water quality standards – except for Cr(VI). Other than Cr(VI), no contaminant present in the District's active wells exceeds regulatory standards, and the District needs only to chlorinate the water at the wellhead before supplying the water directly to the distribution system and the District's customers.

68.     Cr(VI) from McClellan has infiltrated and contaminated all of the District's wells. All of the District's wells have had Cr(VI) concentrations in excess of California's Cr(VI) Public Health Goal.

**F.     Supplier Defendants Introduced Products Containing Cr(VI) into the Market Despite Knowing of Their Defects and Failed to Warn Consumers of Those Defects**

69.     Supplier Defendants knew, or reasonably should have known, that:

a.     Cr(VI) was and is a natural and intended constituent of their chromate products, including chromic acid;

b.     Cr(VI) was and is a mobile and persistent compound in groundwater capable of mixing easily with groundwater, and of migrating quickly and across substantial distances through aquifers;

c.     Cr(VI) was and is a dangerous compound that increases the risk of cancer, damages DNA, and presents other health risks when exposed to human beings;

d.     The gravity of health hazards associated with Cr(VI), coupled with its physical and chemical characteristics, including its mobility and persistence in groundwater, made and make it a particularly nefarious contaminant in aquifers used for drinking water;

e.      Releases of Cr(VI) into the environment were and will be an inevitable consequence of placing chromate products into the stream of commerce in the absence of precautionary measures to prevent or mitigate such releases; and

f.      Removing Cr(VI) contamination from groundwater aquifers, drinking water wells, and other surface and subsurface properties would require significant expense.

70.      Despite their actual or constructive knowledge of the hazards inherent in their chromate products, Supplier Defendants introduced those products into the stream of commerce and fostered a market for those products by marketing and promoting them, and by concealing the potential for groundwater and drinking water supply contamination inherent in those products.

71.      Supplier Defendants were aware, or reasonably should have been aware, of the human health and environmental hazards associated with the use of their chromate products by at least 1937, the year after McClellan became an operative military installation.

72.      Supplier Defendants failed to warn their customers, retailers, regulators, public officials or the State of the likelihood that Cr(VI) would be released to the environment as a result of the normal use of their chromate products in the metal plating process and other industrial processes such as were continuously carried out by Air Force at McClellan during the time relevant to this litigation.

73.      Written admonitions provided to purchasers of Supplier Defendants' chromate products did not include sufficient warnings describing the likelihood of environmental release of Cr(VI) with the normal and foreseeable use of that product, nor of the propensity for Cr(VI) to infiltrate groundwater aquifers and contaminate drinking water supplies.

74.      As a direct and proximate result of Supplier Defendants' introduction of defective chromate products into the stream of commerce, and their failure to warn of those known defects, Cr(VI) was released into the environment at McClellan Air Force Base and polluted the NAS aquifer, including Rio Linda's wells, and has contaminated Rio Linda's drinking water supply, rendering Rio Linda unable to deliver clean drinking water to its customers.

### G.   Rio Linda's Injuries and Damages Arising Out of Cr(VI) Contamination

75.     Cr(VI) has contaminated all of the District's wells. Every one of the District's wells requires wellhead treatment to remove Cr(VI) from drinking water in the absence of removal of Cr(VI) from the aquifer. Additionally, normal and expected increases in the District's customer base and demand will require construction of new drinking water production wells, each of which will require treatment to remove Cr(VI) at these and any other new production facilities the District must construct. The capital and operational costs of wellhead treatment on the District's existing and anticipated wells are significant.

76.     The District has removed wells from service due to Cr(VI) contamination, and some of these wells are planned for permanent decommissioning. The District must replace the production capacity of these wells with new production wells, necessitating *inter alia* the acquisition of land, and construction and operation of new pumping and transmission facilities, at significant expense to the District.

77.     A significant number of homes and businesses rely on private wells located within the District's service area boundaries. These private wells also suffer from Cr(VI) contamination emanating from McClellan. The District reasonably anticipates that these individual private well users will switch to obtaining their drinking water from the District because the contamination is most severe in the shallow reaches of the aquifer from which the private well draw their supply, and because of the significant capital and operational costs associated with adding wellhead Cr(VI) treatment to each individual well. The District must obtain additional drinking water production to serve this influx of customers, and provide treatment for that new production, at significant expense to the District.

78.     The District has incurred significant costs associated with investigating the extent of Cr(VI) contamination in its wells.

79.     The District has incurred significant costs associated with sampling and monitoring its wells to keep abreast of Cr(VI) concentrations therein, in order to prevent exposing its customers to dangerous levels of Cr(VI).

80.     Plaintiff has been deprived of its right to appropriate, use and enjoy the groundwater underlying its property because of the presence of Cr(VI) therein.

## V.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### 42 U.S.C. § 6972(a)(1)(B)

### Substantial and Imminent Endangerment as Against U.S. Air Force

81.     Plaintiff Rio Linda Elverta Community Water District incorporates by reference each and every allegation contained above, as though set forth fully herein.

82.     Plaintiff is a person within the meaning of RCRA authorized to pursue a citizen enforcement action on its own behalf.

83.     The United States is subject to RCRA citizen enforcement for its contribution, by and through the acts and omissions of Air Force, an agency and instrumentality of the United States, to the past or present handling, storage, treatment, transport and/or disposal of chromate products and their constituents, including Cr(VI), each of which is a solid and hazardous waste which may present an imminent and substantial endangerment to health or the environment.

84.     Air Force systematically and routinely used chromate products and/or materials containing Cr(VI), and in doing so, contributed to the past and/or present handling, storage, treatment, transportation and/or disposal of chromate products and/or other materials containing Cr(VI) at McClellan. For instance, Air Force handled Cr(VI) in carrying out various routine aircraft maintenance activities at McClellan; maintained stores of Cr(VI) on account of those activities; transported Cr(VI) about McClellan on account of those activities; and treated and disposed of Cr(VI) waste byproducts of those activities through its wastewater treatment and discharge system, and in open pits, at McClellan.

85.     Air Force's Cr(VI) releases from McClellan were discharges of solid waste, and included, but were not limited to, discharges of liquid wastewater and semiliquid sludge containing Cr(VI) that were inherently waste-like and that were abandoned as a byproduct of Air Force's metal plating and other routine aircraft maintenance operations.

86.     The solid wastes Air Force discharged pursuant to its routine aircraft maintenance and other activities at McClellan are properly characterized under RCRA as hazardous wastes. Cr(VI) in the quantity and concentration discharged by Air Force, and due to its inherent physical and chemical properties, can cause or significantly contribute to an increase in mortality or increase in serious, irreversible, or incapacitating illnesses, such as cancer, as well as pose a substantial present and/or potential hazard to human health and the environment when improperly handled, stored, treated, transported and/or disposed of, or otherwise improperly managed. Additionally, the presence of chromium generally (regardless of its oxidation state) in solid waste, in concentrations greater than 5 ppm, is defined as a hazardous waste under 40 C.F.R. section 261.24. Concentrations of total chromium, which includes Cr(VI), in wastes disposed of at the Base have tested well in excess of 5 ppm.

87.     Air Force's Cr(VI) discharges, and the consequent Cr(VI) contamination in the NAS aquifer, may present substantial and imminent threats to human health and the environment. Without abatement of the Cr(VI) present in Rio Linda's wells, its customers have been and will continue to be exposed to the threat of harm when they use their carcinogenic, toxic, and otherwise hazardous tap water for drinking, bathing, washing, or other normal uses. This threat of harm is grave enough to induce Rio Linda to shut down those of its wells that produce water with high levels of Cr(VI) so as to mitigate its customers' exposure to additional risk of harm. Such a risk is now, and will continue to be present, until the Cr(VI) contamination in Rio Linda's groundwater supply is abated through removal or treatment.

88.     Wherefore, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

### Contribution to the Creation of a Nuisance as Against All Defendants

89.     Plaintiff Rio Linda Elverta Community Water District incorporates by reference each and every allegation contained above, as though set forth fully herein.

90.     Plaintiff owns property within Sacramento County on which its drinking water extraction and transmission infrastructure is located that has been injured and will continue to be injured by Cr(VI) contamination of underlying groundwater aquifers. Additionally, Plaintiff has

1  a protectible property interest in its groundwater supply that has been injured and will continue

2  to be injured by Cr(VI) contamination of that groundwater.

3      91.    Defendants, and each of them, by their acts and omissions, including their use,

4  handling storage, treatment, disposal, manufacture, promotion, marketing, sale, distribution

5  supply, release, spill, and/or failure to control chromate products and/or Cr(VI) at McClellan,

6  contributed to the creation of a condition that adversely affects Plaintiff's property, and permitted

7  that condition to persist, which constitutes a nuisance in the form of serious and on-going

8  contamination of Plaintiff's wells and groundwater supply with Cr(VI).

9      92.    Defendant Air Force's routine use, handling, storage, treatment, transport and/or

10  disposal of chromate products and/or Cr(VI) at McClellan Air Force Base or the purpose of

11  chrome plating, among other purposes, resulted in environmental releases of Cr(VI) that caused

12  Cr(VI) contamination of the NAS aquifer and Plaintiff's wells.

13      93.    Supplier Defendants, and each of them, marketed, promoted, distributed, sold,

14  supplied and/or otherwise entrusted, either directly or indirectly, their chromate products to

15  customers and end-users, including Air Force, when they knew, or reasonably should have

16  known, that:

17          a.  Customers would use Defendants' chromate products as intended or in a

18              reasonably foreseeable manner;

19          b.  Such use would result in environmental releases of Cr(VI);

20          c.  Upon release, Cr(VI) would migrate readily into and through groundwater

21              aquifers, thereby contaminating those aquifers, including aquifers used for

22              drinking water supply, and, ultimately, be difficult and costly to remove.

23      94.    Supplier Defendants, and each of them, failed to provide adequate warnings of,

24  take precautionary measures to mitigate, or instruct consumers of their chromate products to

25  mitigate, the known hazards and risks associated with use of their chromate products.

26      95.    Supplier Defendants thereby fostered a market for their chromate products that

27  artificially inflated demand for those chromate products, given the undisclosed risks associated

28  with use of those products.

96.    Cr(VI) contamination in the NAS aquifer and Plaintiff's wells increases the risk of cancer and other diseases to Plaintiff's customers, and is therefore injurious to health.

97.    Cr(VI) contamination in the NAS aquifer and Plaintiff's wells prevents Plaintiff from utilizing its right to appropriate, use and enjoy groundwater from its wells, and therefore obstructs the free use of Plaintiff's property interest in its groundwater.

98.    Cr(VI) contamination in the NAS aquifer and Plaintiff's wells, through the creation of a human health hazard and the obstruction of Plaintiff's extraction, sale and distribution of its groundwater, interferes with comfortable use and enjoyment of Plaintiff's property.

99.    Plaintiff did not consent to any of Defendants' acts and/or omissions that created the Cr(VI) contamination in Plaintiff's property.

100.    An ordinary person, and an ordinary water district in Plaintiff's position, would be reasonably annoyed or disturbed by Defendants', and each of their acts and omissions and the Cr(VI) contamination created thereby.

101.    As a direct and proximate result of Defendants, and each of their acts and omissions, Plaintiff sustained injuries and damages as set forth herein.

102.    Cr(VI) releases continue to leach into Plaintiff's wells, and Plaintiff continues to suffer therefrom. The contamination of Plaintiff's wells has varied over time. This condition may be discontinued or abated by removal of Cr(VI) from the aquifer, or by removal of Cr(VI) from groundwater once it has been extracted from the aquifer.

103.    Defendants are jointly and severally liable for all such injuries and damages as are described herein, and Plaintiff is entitled to recover all such damages in this action.

104.    The Supplier Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including Cr(VI) contamination of drinking water supplies. The Supplier Defendants committed each of the acts described herein knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote the sale of their chromate products, in conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon human health, property, and the

environment. Therefore, Plaintiff requests an award of exemplary damages in an amount that is sufficient to punish the Supplier Defendants and that fairly reflects the aggravating circumstances alleged herein.

105.    Wherefore, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION

### Negligence as Against All Defendants

106.    Plaintiff Rio Linda Elverta Community Water District incorporates by reference each and every allegation contained above, as though set forth fully herein.

107.    Supplier Defendants, and each of them, during the time relevant to this litigation, knew or should have known of the threats posed by Cr(VI) from chromate products to human health and the environment, and the risks to groundwater aquifers and drinking water supplies, including the propensity of Cr(VI) from chromate products to infiltrate groundwater aquifers upon release to the environment and the likely harms to drinking water suppliers, and other users of groundwater, as a consequence of such releases.

108.    Defendant United States, during a substantial portion of the time relevant to this litigation, knew or should have known of the threats posed by Cr(VI) from chromate products to human health and the environment, and the risks to groundwater aquifers and drinking water supplies, including the propensity of Cr(VI) from chromate products to infiltrate groundwater aquifers upon release to the environment and the likely harms to drinking water suppliers, and other users of groundwater, as a consequence of such releases.

109.    For a substantial portion of the time relevant to this litigation, Defendant United States knew of the local hydrogeology, as well as the propensity for contaminants released into the environment at McClellan to infiltrate the groundwater aquifer and migrate through the aquifer, beyond the surface boundaries of the Base.

110.    Based on their respective actual and/or constructive knowledge, Defendants, and each of them, had a duty to use due care in manufacturing, marketing, promoting, selling, handling, storing, treating, transporting, and disposing of chromate products, including, but not limited to, chromate products used at McClellan Air Force Base.

**COMPLAINT**

111.     That duty obligated Air Force to take reasonable precautions to, *inter alia*, prevent the environmental release of Cr(VI) at McClellan, to remediate and abate known releases at McClellan, and to prevent Cr(VI) released at McClellan from migrating away from McClellan and toward and through other portions of the aquifer, including, but not limited to, Plaintiff's drinking water wells.

112.     That duty obligated Supplier Defendants, and each of them, to take reasonable precautions to, *inter alia*, remove defects from their chromate products, to warn consumers of their chromate products of known defects therein, and to instruct consumers of their chromate products to adopt reasonable precautions to mitigate or eliminate the risks to human health and the environment, and the risks to groundwater aquifers and drinking water supplies, that derive from normal and foreseeable use of their chromate products.

113.     Defendants, individually and collectively, breached that duty of care by, *inter alia*,

    a.  Failing to conduct reasonable, appropriate and/or adequate scientific studies to evaluate the likely environmental fate and transport and potential human health and environmental effects of their chromate products and Cr(VI).

    b.  Failing to instruct consumers of their chromate products as to means for preventing environmental release and/or groundwater aquifer contamination of Cr(VI) that was a foreseeable result of the intended and foreseeable use of those products;

    c.  Handling, storing, transporting, treating, and disposing of chromate products in such a manner that Cr(VI) was released to the environment from McClellan Air Force Base;

    d.  Failing to adequately treat wastes containing Cr(VI) to remove Cr(VI) concentrations hazardous to human health and the environment;

    e.  Failing to act to prevent Cr(VI) that was known to have entered the aquifer underlying McClellan from migrating beyond the Base's surface boundaries and infiltrating Plaintiff's wells;

**COMPLAINT**                                                                22

f.  Failing to warn of known defects inherent in Supplier Defendants' chromate products;

g.  Fostering a market for Supplier Defendants' chromate products despite the known defects and hazards inherent in their products.

114.  Defendants, and each of them, were under a duty to comply with California Civil Code section 3479 and breached that duty by contributing to Cr(VI) contamination in Plaintiff's wells. Section 3479 is intended to prevent the injuries to property and the free use and enjoyment thereof such as are described herein. Section 3479 is intended to protect property owners and possessors such as Plaintiff from undue interference with their property rights.

115.  Defendants, and each of their acts and omissions were actual, substantial causes of Cr(VI) contamination in Rio Linda's groundwater supply and its consequences, including Plaintiff's injuries as set forth herein, as Cr(VI) concentrations in Plaintiff's water supply would not have risen to the levels that caused Plaintiff's injuries but for Defendants' acts and omissions.

116.  Defendants, and each of their acts and omissions are the proximate causes of Plaintiff's injuries and damages as set forth herein. No other act, omission, or natural phenomenon intervened in the chain of causation between Defendants' conduct and Plaintiff's injuries and damages.

117.  As a direct and proximate result of Defendants, and each of their, acts and omissions, Plaintiff sustained injuries and damages as set forth herein.

118.  Defendants are jointly and severally liable for all such injuries and damages as are described herein, and Plaintiff is entitled to recover all such damages in this action.

119.  The Supplier Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including Cr(VI) contamination of drinking water supplies. The Supplier Defendants committed each of the acts described herein knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote the sale of their chromate products, in conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon human health, property and the environment. Therefore, Plaintiff requests an award of exemplary damages in an amount that is

1   sufficient to punish the Supplier Defendants and that fairly reflects the aggravating

2   circumstances alleged herein.

3       120.    Wherefore, Plaintiff prays for relief as set forth below.

4   ## FOURTH CAUSE OF ACTION

5   ## Trespass as Against All Defendants

6       121.    Plaintiff Rio Linda Elverta Community Water District incorporates by reference

7   each and every allegation contained above, as though set forth fully herein.

8       122.    Plaintiff owns and possesses its drinking water production system, including

9   drinking water production wells that extract groundwater from the NAS aquifer in Sacramento

10  County, California.

11      123.    Plaintiff actually and actively exercises its rights to appropriate and use

12  groundwater drawn from its wells.

13      124.    Defendants, and each of them, so intentionally, negligently and/or recklessly used,

14  handled, stored, treated, transported, disposed of, manufactured, promoted, marketed, sold,

15  distributed, supplied, released, spilled, and/or failed to control chromate products used at

16  McClellan, and/or failed to remediate environmental releases of chromate products and/or Cr(VI)

17  at McClellan that they actually and proximately caused Cr(VI) to enter Plaintiff's drinking water

18  production wells and contaminate Plaintiff's drinking water supply.

19      125.    Defendant United States intended to handle, store, treat, transport, and dispose of

20  chromate products at McClellan Air Force Base.

21      126.    Supplier Defendants, and each of them, intended to manufacture, promote, sell,

22  distribute, and/or supply chromate products, directly or indirectly, to the United States.

23      127.    Environmental release of Cr(VI) at McClellan was the immediate, inevitable and

24  foreseeable result of Defendant United States' use, handling, storage, treatment, transport, and/or

25  disposal of chromate products at McClellan, and of Supplier Defendants' manufacture,

26  promotion, sale, and/or distribution of their chromate products, directly or indirectly, to

27  McClellan.

28

128.     Supplier Defendants, and each of them, during the time relevant to this litigation, knew or should have known that Cr(VI) has a propensity to infiltrate groundwater aquifers when released to the environment; is a mobile and persistent groundwater contaminant capable of moving substantial distances within aquifers; is toxic to human health and the environment; and is therefore extremely hazardous to groundwater, drinking water systems, human health, and the environment.

129.     Defendant United States, during a substantial portion of the time relevant to this litigation, knew or should have known that Cr(VI) has a propensity to infiltrate groundwater aquifers when released to the environment; is a mobile and persistent groundwater contaminant capable of moving substantial distances within aquifers; is toxic to human health and the environment; and is therefore extremely hazardous to groundwater, drinking water systems, human health, and the environment.

130.     Supplier Defendants, and each of them, during the time relevant to this litigation, knew or should have known that their acts and/or omissions described herein would result in Cr(VI) releases and consequently threaten public health and cause extensive contamination of drinking water supplies.

131.     Defendant United States, during a substantial portion of the time relevant to this litigation, knew or should have known that their acts and/or omissions described herein would result in Cr(VI) releases and consequently threaten public health and cause extensive contamination of drinking water supplies.

132.     Plaintiff did not give Defendants, or any of them, permission to cause Cr(VI) to enter its groundwater wells.

133.     As a direct and proximate result of Defendants, and each of their, acts and omissions resulting in Cr(VI) entering Plaintiff's drinking water wells, Plaintiff sustained actual injuries and damages as set forth herein.

134.     Defendant Air Force's acts and omissions were a substantial factor in causing Cr(VI) to enter Plaintiff's property and Plaintiff's consequent injuries and damages, as set forth herein.

135.    Defendants are jointly and severally liable for all such injuries and damages as are described herein, and Plaintiff is entitled to recover all such damages in this action.

136.    The Supplier Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including Cr(VI) contamination of drinking water supplies. The Supplier Defendants committed each of the acts described herein knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote the sale of their chromate products, in conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon human health, property and the environment. Therefore, Plaintiff requests an award of exemplary damages in an amount that is sufficient to punish the Supplier Defendants and that fairly reflects the aggravating circumstances alleged herein.

137.    Wherefore, Plaintiff prays for relief as set forth below.

## FIFTH CAUSE OF ACTION

### Strict Liability – Design Defect as Against Supplier Defendants

138.    Plaintiff Rio Linda Elverta Community Water District incorporates by reference each and every allegation contained above, as though set forth fully herein.

139.    Supplier Defendants, and each of them, manufactured, formulated, designed, packaged, distributed, tested, recommended, merchandised, marketed, promoted, sold and/or distributed chromate products containing Cr(VI), which was intended by Supplier Defendants to be used for, *inter alia*, chrome plating and painting.

140.    Supplier Defendants, and each of them, knew that their chromate products were to be purchased and used without inspection for defects.

141.    Supplier Defendants' chromate products were purchased or otherwise acquired, either directly or indirectly, from the Supplier Defendants, and each of them, by Defendant Air Force, and were used at McClellan Air Force Base.

142.    Defendant Air Force used the chromate products it acquired from Supplier Defendants in a reasonably foreseeable manner.

143. Supplier Defendants' chromate products contained a design defect, namely, the propensity of Cr(VI), a constituent of their chromate products, to percolate into groundwater aquifers, migrate throughout aquifers, and eventually contaminate aquifers used for supplying drinking water, thereby increasing the risk of illness or death associated with exposure to Cr(VI).

144. Such a design defect rendered Supplier Defendants' chromate products unreasonably dangerous.

145. Throughout the time at issue, Defendants' chromate products were defective because an ordinary consumer would not expect chromate products to cause extensive groundwater contamination when used in a foreseeable and intended manner, that such use would damage property and pose significant dangers to public health and the environment.

146. Additionally, and in the alternative, throughout the time at issue, Supplier Defendants' chromate products were defective because the gravity of the potential health and environmental consequences of their use, including materially increased risk of cancer, mutation, and DNA disruption in humans, and the propensity of Cr(VI) from chromate products to infiltrate groundwater aquifers and damage property interests therein, outweighed the cost to Supplier Defendants of reducing or eliminating such risk.

147. Supplier Defendants, and each of their, chromate products contained the aforementioned design defect at the time they left the Supplier Defendants' possession.

148. Plaintiff suffered injuries and damages as described herein as a direct and proximate result of the defective design of Supplier Defendants' chromate products.

149. Plaintiff suffered injuries and damages as described herein as a direct and proximate result of Supplier Defendants' acts and omissions.

150. The defective design of Supplier Defendants' chromate products was a substantial factor in causing Plaintiff's injuries and damages.

151. Supplier Defendants are strictly, jointly and severally liable for all such injuries and damages as are described herein, and Plaintiff is entitled to recover all such damages in this action.

152.     The Supplier Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including Cr(VI) contamination of drinking water supplies. The Supplier Defendants committed each of the acts described herein knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote the sale of their chromate products, in conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon human health, property and the environment. Therefore, Plaintiff requests an award of exemplary damages in an amount that is sufficient to punish the Supplier Defendants and that fairly reflects the aggravating circumstances alleged herein.

153.     Wherefore, Plaintiff prays for relief as set forth below.

## SIXTH CAUSE OF ACTION

### Strict Liability – Failure to Warn as Against Supplier Defendants

154.     Plaintiff Rio Linda Elverta Community Water District incorporates by reference each and every allegation contained above, as though set forth fully herein.

155.     Supplier Defendants, and each of them, manufactured, formulated, designed, packaged, distributed, tested, recommended, merchandised, marketed, promoted, sold and/or distributed chromate products containing Cr(VI), which were intended by Supplier Defendants to be used for, *inter alia*, chrome plating, metal coating, and painting, such as was carried out by Air Force at McClellan.

156.     Supplier Defendants, and each of them, knew that their chromate products were to be purchased and used without inspection for defects.

157.     Supplier Defendants' chromate products were purchased or otherwise acquired, either directly or indirectly, from the Supplier Defendants, and each of them, by Defendant Air Force, and were used at McClellan Air Force Base.

158.     Supplier Defendants, and each of them, at the times they placed their chromate products into the stream of commerce, knew or should have known, that use of Supplier Defendants' chromate products in their intended manner, or reasonably foreseeable misuse of

those products, would result in the spillage, discharge, disposal or release of Cr(VI) to the environment.

159.   Supplier Defendants, and each of them, at the times they placed chromate products into the stream of commerce, knew or should have known, in light of the scientific knowledge generally accepted at the time, that:

a.   Cr(VI) was a natural constituent of their chromate products;

b.   Cr(VI) is a mobile and persistent compound in groundwater capable of mixing easily with groundwater, and of migrating quickly and across substantial distances through aquifers;

c.   Cr(VI) is a dangerous compound that poses serious risks to human health that include, but are not limited to, increases in the risk of cancer; DNA damage, and presents other health risks when exposed to human beings;

d.   The gravity of health hazards associated with Cr(VI), coupled with its aquatic mobility, make it a particularly nefarious contaminant in aquifers and wells used for producing drinking water;

e.   Releases of Cr(VI) into the environment would be an inevitable and foreseeable consequence of placing chromate products into the stream of commerce for consumers to use as intended, or with foreseeable misuse, in the absence of precautionary measures to prevent or mitigate such releases;

f.   The manner in which Supplier Defendants were manufacturing, formulating, designing, packaging, distributing, testing, recommending, merchandising, marketing, promoting, selling and/or distributing their chromate products would result in Cr(VI) contamination of aquifers and wells used for producing drinking water, as a result of ordinary use of their chromate products; and

g.   Removing Cr(VI) contamination from groundwater aquifers, drinking water wells, and other surface and subsurface properties would require significant expense.

160.    These potential risks of Supplier Defendants' chromate products presented a substantial danger of drinking water contamination and human exposure to Cr(VI) when Air Force used Supplier Defendants' chromate products as intended, or misused them in a reasonably foreseeable manner, at McClellan Air Force Base.

161.    During the time relevant to this litigation, ordinary consumers would not have recognized the potential risk of groundwater contamination and resultant drinking water well contamination associated with the use of chromate products.

162.    Despite the known and/or foreseeable environmental and human health hazards, and risks to groundwater aquifers and drinking water supplies, associated with the use of their chromate products, Supplier Defendants, and each of them, failed to provide adequate warnings of, take any precautionary measures to mitigate, or instruct users how to mitigate, those hazards and risks.

163.    Plaintiff Rio Linda Elverta Community Water District suffered the injuries and damages described herein, including, but not limited to, the contamination of their drinking water production wells with Cr(VI), as a direct and proximate result of Supplier Defendants' failure to warn Air Force of the known and/or foreseeable risks associated with the use of their chromate products.

164.    The lack of sufficient warnings of the propensity for Cr(VI) in Defendants' chromate products to infiltrate and permeate groundwater aquifers, and instructions for mitigating or abating such infiltration, were a substantial cause of Plaintiff's injuries.

165.    Supplier Defendants are strictly, jointly and severally liable for all such injuries and damages as are described herein, and Plaintiff is entitled to recover all such damages in this action.

166.    The Supplier Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including Cr(VI) contamination of drinking water supplies. The Supplier Defendants committed each of the acts described herein knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote the sale of their chromate products, in conscious disregard of the probable dangerous

consequences of that conduct and its foreseeable impact upon human health, property and the environment. Therefore, Plaintiff requests an award of exemplary damages in an amount that is sufficient to punish the Supplier Defendants and that fairly reflects the aggravating circumstances alleged herein.

167. Wherefore, Plaintiff prays for relief as set forth below.

## SEVENTH CAUSE OF ACTION

### Liability under California Civil Code Section 1882 as Against All Defendants

168. Plaintiff Sacramento Suburban Water District incorporates by reference each and every allegation contained above, as though set forth fully herein.

169. Plaintiff is a utility that owns and operates a water system.

170. The water that is pumped from Plaintiff's wells is property owned or used by Plaintiff to provide utility services.

171. The groundwater that supplies Plaintiff's wells is property owned or used by Plaintiff to provide utility services.

172. By causing the introduction of Cr(VI) into Plaintiff's wells and the groundwater that supply such wells as alleged herein, Supplier Defendants, and each of the, injured, altered, interfered with, and/or otherwise prevented from performing its normal or customary function property owned or used by Plaintiff to provide utility services.

173. As a direct and proximate result of Supplier Defendants', and each of their, acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur, investigation, treatment, and monitoring costs and expenses related to Cr(VI) contamination of Plaintiff's water system, in an amount to be proved at trial, for which Defendants are liable pursuant to California Civil Code section 1882.1.

174. Pursuant to California Civil Code section 1882.2, Supplier Defendants are liable for three times the amount of Plaintiff's actual damages, plus the costs of this suit and reasonable attorney's fees.

175. Wherefore, Plaintiff prays for relief as set forth below.

SHER
EDLING LLP

**COMPLAINT**

31

## VI.     PRAYER FOR RELIEF

WHEREFORE Plaintiff Rio Linda Elverta Community Water District seeks judgment against these Defendants for:

1.      An award of compensatory damages according to proof;

2.      Injunctive and equitable relief to compel Defendants to comply with RCRA and to abate their nuisance and trespass by removing Cr(VI) from Plaintiff's water;

3.      An award of exemplary damages in an amount sufficient to punish the Supplier Defendants and to deter those Defendants from ever committing the same or similar acts;

4.      An award of treble damages, pursuant to California Civil Code section 1882.2;

5.      Costs, including reasonable attorneys' fees, court costs, and other expenses of litigation;

6.      Prejudgment interest; and

7.      Any other and further relief as the Court deems just, proper and appropriate.


Dated:  June 30, 2017                          **SHER EDLING LLP**


                                    By:   */s/ Victor M. Sher*
                                          Victor M. Sher
                                          Matthew K. Edling
                                          Timothy R. Sloane

                                          *Attorneys for Plaintiff Rio Linda Elverta*
                                          *Community Water District*

1

## VII.   <u>JURY DEMAND</u>

2

Plaintiff Rio Linda Elverta Community Water District hereby demands a jury trial on all

3

causes of action for which a jury is available under the law.

4

5

Dated:  June 30, 2017                                       **SHER EDLING LLP**

6

7

By:   */s/ Victor M. Sher*
_____

Victor M. Sher

8

Matthew K. Edling

Timothy R. Sloane

9

10

*Attorneys for Plaintiff Rio Linda Elverta*
*Community Water District*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28